1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6                            SAN JOSE DIVISION

7

8    M.J.R.,                              Case No.  24-cv-02885-VKD

9                     Plaintiff,

10          v.                            **ORDER RE SOCIAL SECURITY
                                          APPEAL**
11   FRANK BISIGNANO,
                                          Re: Dkt. Nos. 15, 16, 17
12                    Defendant.

13

14          Plaintiff M.J.R.[1] challenges, in part, a final decision of the Commissioner of Social

15   Security ("Commissioner")[2] regarding his applications for disability insurance benefits ("DIB")

16   and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act

17   ("Act"), 42 U.S.C. §§ 423, 1381, *et seq.*  M.J.R. does not challenge the finding that he was

18   disabled and entitled to SSI benefits as of February 1, 2017, when his age category changed to that

19   of a person of advanced age.  However, M.J.R. contends that the administrative law judge ("ALJ")

20   erroneously concluded that he was not disabled at any time prior to February 1, 2017.  In

21   particular, M.J.R. argues that the ALJ erred in her evaluation of the opinions of his primary care

22   physician, Anne Rosenthal, M.D.  The Commissioner argues that the ALJ properly evaluated Dr.

23   Rosenthal's opinions in concluding that the opinions did not support a finding of disability prior to

24   _____

25   [1] Because orders of the Court are more widely available than other filings, and this order contains
     potentially sensitive medical information, this order refers to the plaintiff only by his initials.  This
26   order does not alter the degree of public access to other filings in this action provided by Rule
     5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).
27
     [2] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for his
28   predecessor pursuant to Federal Rule of Civil Procedure 25(d).

United States District Court
Northern District of California

United States District Court
Northern District of California

2017.

The parties have filed their respective briefs.  Dkt. Nos. 15-17.  The matter was submitted without oral argument.  Civil L.R. 16-5.  Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order.[3]

## I.    BACKGROUND

M.J.R. was 58 years old on December 11, 2020, the date he filed his DIB and SSI applications.  *See* AR[4] 43, 82, 98.  The record indicates that he has at least a high school education, and worked as a restaurant general manager until March 2010.  M.J.R. stopped working at that time after a disagreement with the restaurant's owners.  *See* AR 48-49, 274, 286-287.  Several months later, on August 23, 2010, M.J.R. saw his physician for a physical examination regarding fatigue and shortness of breath M.J.R. said he had been experiencing for several weeks.  Lab results were positive for D-dimer, and a chest x-ray revealed mild cardiomegaly.  *See* AR 1257, 1259, 1260, 1275.  M.J.R. was advised to go to the emergency department, where he was admitted to the hospital with cardiomyopathy and found to have new onset of diabetes mellitus type II.  *See* AR 1048-1057, 1062, 1072, 1100.  He was discharged on August 26, 2010 with diagnoses of cardiomyopathy, excessive sweating, lymphadenopathy, sleep disorder/sleep apnea, and type II diabetes.  *See* AR 1100.

In his DIB and SSI applications, M.J.R. alleged disability beginning on August 25, 2010, when he was 48 years old, due to heart disease, type II diabetes, and hypertension.  AR 71, 84, 100, 113, 244, 250, 285.  His applications were denied initially and on review.  AR 70-81, 83-97, 99-110, 112-125.  The ALJ held a hearing on September 13, 2023 (AR 40-69) and subsequently issued a partially unfavorable decision on October 2, 2023 (AR 17-32).

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 7.

[4] "AR" refers to the certified administrative record filed with the Court.  Dkt. No. 10.

United States District Court
Northern District of California

1    The ALJ found that M.J.R. meets the insured status requirements of the Act through

2   December 31, 2015 and that he has not engaged in substantial gainful activity since August 25,

3   2010, the alleged onset date.  AR 20.  The ALJ further found that since August 25, 2010, M.J.R.

4   has had the following severe impairments:  congestive heart failure, diabetes with retinopathy,

5   hypertension, obesity, obstructive sleep apnea, gout, carpal tunnel syndrome, and alcohol abuse

6   disorder.  *Id*.  However, the ALJ concluded that M.J.R. has not had an impairment or combination

7   of impairments that meets or medically equals the severity of one of the impairments listed in the

8   Commissioner's regulations.  *Id*.  The ALJ determined that since the alleged onset date of August

9   25, 2010, M.J.R. has had the residual functional capacity ("RFC") to perform light work, with

10  some limitations:

> [M.J.R.] is capable of occasional overhead reaching with both arms,
> and occasional pushing or pulling with both arms.  He is capable of
> occasional pushing or pulling with both legs.  He is capable of
> occasional climbing of ramps or stairs; but never climbing of
> ladders, ropes or scaffolds.  He is capable of occasional stooping,
> kneeling, and crawling.  He can perform frequent, but not constant,
> handling and fingering with both hands.  He is capable of frequent
> near and far visual acuity.  He can work where there is no
> concentrated exposure to extreme heat and cold, wetness and
> humidity, or respiratory irritants; and no hazards such as dangerous
> moving machinery or unprotected heights.  He is capable of simple,
> routine, repetitive tasks; but not at a fast rate pace, such as assembly
> line work.

18  AR 20-21.  The ALJ found that since August 25, 2010, M.J.R. has been unable to perform any

19  past relevant work.  AR 29.  The ALJ further noted that on February 1, 2017, M.J.R.'s age

20  category changed to that of a person of advanced age.  *Id*.

21    The ALJ found that prior to February 1, 2017, and based on his age, education, work

22  experience, and RFC, M.J.R. could perform other jobs that exist in significant numbers in the

23  national economy, such as storage facility clerk, housekeeper, and routine clerk.  AR 29-30.

24  However, the ALJ determined that as of February 1, 2017 when M.J.R.'s age category changed,

25  and in view of M.J.R.'s age, education, and work experience, "a finding of 'disabled' is reached

26  by direct application of Medical-Vocational Rule 202.06," and that there are no jobs that exist in

27  significant numbers in the national economy that M.J.R. can perform.  AR 31.  Accordingly, the

28  ALJ concluded that M.J.R. became disabled on February 1, 2017 and continued to be disabled

1    through the date of the ALJ's decision, thus finding in M.J.R.'s favor with respect to SSI benefits.[5]

2    AR 31, 32.  As noted above, M.J.R. does not challenge that determination.  The focus of the

3    present appeal is M.J.R.'s DIB application and the ALJ's conclusion that M.J.R. was not disabled

4    prior to February 1, 2017, and that he was not disabled within the meaning of the Act at any time

5    through December 31, 2015, his date last insured.[6]  *Id.*

6          The Appeals Council denied M.J.R.'s request for review of the ALJ's decision.  AR 1-6.

7    M.J.R. then filed the present action seeking judicial review of the decision denying his DIB

8    application.

9    **II.     STANDARD OF REVIEW**

10         Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

11   decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

12   supported by substantial evidence or if it is based upon the application of improper legal

13   standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v.*

14   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context,

15   the term "substantial evidence" means "more than a mere scintilla" but "less than a

16   preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to

17   support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103

18   (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on*

19   *other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether

20   substantial evidence exists to support the Commissioner's decision, the Court examines the

21   administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*,

22   988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

23

---

24   [5] The relevant period to establish disability for SSI claims begins with the date of the claimant's

25   application—here, December 11, 2020.  *See* 20 C.F.R. §§ 416.202, 416.305, 416.330, 416.335, 416.501.

26   [6] To be entitled to Title II benefits, M.J.R. is required to establish disability on or before his date

27   last insured, December 31, 2015.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Accordingly, the relevant period for M.J.R.'s DIB application is the alleged onset date of August

28   25, 2010 to his date last insured, December 31, 2015.

United States District Court
Northern District of California

Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III.    DISCUSSION

### A.    Summary

The parties' primary point of contention is whether the ALJ properly evaluated the opinions offered by M.J.R.'s primary care physician, Anne Rosenthal, M.D.  The record reflects that Dr. Rosenthal began treating M.J.R. in March 2017, and saw him every one to three months.  *See* AR 842, 1039, 2205, 2209.  Dr. Rosenthal offered four opinions regarding his physical and mental functioning:  a February 28, 2021 Physical Medical Source Statement (AR 842-845), a July 21, 2023 Physical Medical Source Statement (AR 2205-2208), a September 10, 2021 Mental Residual Functional Capacity Questionnaire (AR 1039-1042),[7] and a July 21, 2023 Mental Residual Functional Capacity Questionnaire (AR 2209-2211).

#### 1.    Physical Functional Capacity

##### a.    February 28, 2021 Opinion

In a February 28, 2021 Physical Medical Source Statement, Dr. Rosenthal listed M.J.R.'s diagnoses of "heart failure, diabetes, gout, neuropathy, retinopathy, depression, [and] insomnia," with symptoms of "fatigue, shortness of breath, chest pain, dizziness, shoulder pain, back pain, depression, [and] insomnia."  AR 842.  She opined that M.J.R. can walk three city blocks without rest or severe pain; can sit for 30 minutes at one time; and can stand for 15 minutes at one time.  AR 842-843.  Dr. Rosenthal further stated that in an eight-hour workday, M.J.R. can sit about four hours; stand/walk less than two hours; needs to shift positions at will; needs to get up and walk every hour for about five minutes at a time; needs five unscheduled breaks of 10-20 minutes each; and needs to elevate his legs for 50% of the day.  *Id.*  Dr. Rosenthal assessed that M.J.R. can frequently lift and/or carry less than 10 pounds, rarely lift and/or carry 20 pounds, and never lift

---

[7] As discussed below, Dr. Rosenthal's September 10, 2021 questionnaire regarding M.J.R.'s mental functioning also includes a page opining about his physical functional capacity.  *See* AR 1041.

and/or carry 50 pounds.  AR 844.  He can occasionally stoop or bend and climb stairs, and never twist, crouch/squat, or climb ladders.  *Id*.  When experiencing shoulder pain, Dr. Rosenthal noted that M.J.R. would have significant limitations with reaching, handling, or fingering, and that he is able to reach forward with his arms 30% of an eight-hour workday and to reach overhead 10% of a workday.  *Id*.  Dr. Rosenthal further opined that M.J.R. is "[c]apable of low stress work," is likely to be off-task for 25% or more of a typical workday, would have "good days" and "bad days," and would likely be absent from work more than four days per month due to his impairments or treatment.  AR 844-845.  Dr. Rosenthal opined that the earliest date the assessed functional limitations would apply is "2010."  *See* AR 845.

**b.    September 10, 2021 Opinion**

In her September 10, 2021 assessment of M.J.R.'s mental functioning (discussed below), Dr. Rosenthal also opined regarding M.J.R.'s physical functioning.  Dr. Rosenthal noted that in an eight-hour workday, M.J.R. can sit and stand/walk for about two hours; needs to shift positions at will; needs to walk ten times per day for five minutes at a time; would need to elevate his legs for 30% of the day; can frequently lift and/or carry up to 10 pounds, rarely lift and/or carry 20 pounds, and never lift and/or carry 50 pounds.  *See* AR 1041.  Dr. Rosenthal opined that the earliest date the assessed physical functional limitations would apply is "2010."  *See* AR 1042.

**c.    July 21, 2023 Opinion**

In a July 21, 2023 Physical Medical Source Statement, Dr. Rosenthal listed M.J.R.'s diagnoses of "heart failure, diabetes, kidney disease, neuropathy, retinopathy, depression, [and] anxiety," with symptoms of "[f]atigue, weakness, dizziness, mental fogginess, shortness of breath, chest pain, depression, [and] anxiety."  AR 2205.  She assessed that M.J.R. can walk for five city blocks without rest or severe pain; can sit for two hours at a time; and can stand for 20 minutes at a time.  AR 2205-2206.  Dr. Rosenthal further stated that in an eight-hour workday, M.J.R. can sit and stand/walk for about two hours; needs to shift positions at will; and needs to get up and walk every 45 minutes for about five minutes at a time.  AR 2206.  She further opined that during a workday, M.J.R. needs four unscheduled breaks of 10 minutes each and needs to elevate his legs for 30% of the workday.  *Id*.  As in her February 28, 2021 Physical Medical Source Statement, Dr.

United States District Court
Northern District of California

Rosenthal assessed that M.J.R. can frequently lift and/or carry less than 10 pounds, rarely lift and/or carry 20 pounds, never lift and/or carry 50 pounds; occasionally stoop or bend and climb stairs; never twist, crouch/squat, or climb ladders; and will have significant limitations with reaching, handling, or fingering when experiencing shoulder pain. *Id.* However, she additionally noted that M.J.R. should "avoid" any overhead reaching. *Id.* Dr. Rosenthal further stated that M.J.R. is "[i]ncapable of even 'low stress' work," and again opined that he is likely to be off-task 25% or more of a typical workday; would have "good days" and "bad days," and is likely to be absent from work more than four days per month due to his impairments or treatment. AR 2207-2208. Dr. Rosenthal opined that the earliest date the assessed functional limitations would apply is "2010." *See* AR 2208.

### 2.    Mental Functional Capacity

#### a.    September 10, 2021 Mental Residual Functional Capacity Questionnaire

On September 10, 2021, Dr. Rosenthal filled out a Mental Residual Functional Capacity Questionnaire in which she noted M.J.R.'s diagnoses of "heart failure, diabetes, gout, neuropathy, retinopathy, depression, [and] insomnia." AR 1039. Regarding the abilities to understand and remember, Dr. Rosenthal opined that M.J.R.'s impairments would preclude his performance for 5% of an eight-hour workday with respect to understanding and remembering very short and simple instructions. His performance would be precluded for 10% of a workday for remembering locations and work-like procedures. His performance would be precluded for 15% or more of a workday for understanding and remembering detailed instructions. AR 1039.

Regarding sustained concentration and memory, Dr. Rosenthal stated that M.J.R.'s impairments would preclude his performance for 5% of a workday with respect to the abilities to carry out very short and simple instructions and make simple work-related decisions. His performance would be precluded for 10% of a workday with respect to the abilities to perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances; sustain an ordinary routine without special supervision; and work in coordination with or in proximity to others without being distracted by them. His performance would be precluded

for 15% or more of a workday with respect to the abilities to carry out detailed instructions; maintain attention and concentration for extended periods of time; and complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  AR 1040.

Regarding social interaction, Dr. Rosenthal noted that M.J.R.'s abilities are unaffected, except that his impairments would preclude his performance for 5% of a workday with respect to the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and for 10% of a workday with respect to the ability to accept instructions and respond appropriately to critique from supervisors.  *Id.*

Regarding adaptability, Dr. Rosenthal opined that M.J.R.'s ability is unaffected, except that his impairments would preclude his performance for 5% of a workday with respect to the ability to respond appropriately to changes in the work setting and to be aware of normal hazards and take appropriate precautions; and for 15% or more of a workday with respect to the ability to travel in unfamiliar places or use public transportation.  *Id.*

Overall, Dr. Rosenthal opined that due to his physical and/or mental impairments and treatment, M.J.R. is likely to be absent from work five or more days per month, and will likely be unable to complete an eight-hour workday for five days or more per month.  AR 1042.  Dr. Rosenthal opined that the earliest date the assessed functional limitations would apply is "2010." *See id.*

### 3.     July 21, 2023 Opinion

In her July 21, 2023 Mental Residual Functional Capacity Questionnaire, Dr. Rosenthal offered the same assessment of M.J.R.'s mental functioning in all categories as she did in her September 10, 2021 opinion, except that for adaptability, she added a limitation that M.J.R.'s impairments would preclude his performance for 10% of an eight-hour workday with respect to the ability to set realistic goals or make plans independently of others.  *See* AR 2209-2210.

Dr. Rosenthal again opined that due to his physical and/or mental impairments and treatment, M.J.R. is likely to be absent from work five or more days per month, and will likely be unable to complete an eight-hour workday for five days or more per month.  AR 2211.  Dr.

Rosenthal opined that the earliest date the assessed functional limitations would apply is "2010." *See id*.

\* \* \*

The ALJ found Dr. Rosenthal's opinions regarding M.J.R.'s physical functional capacity partially persuasive and found her opinions regarding M.J.R.'s mental functional capacity not persuasive. *See* AR 28-29. M.J.R. argues that the ALJ did not properly evaluate Dr. Rosenthal's opinions and failed to ground her assessment in the record evidence. He contends that this error is problematic for several reasons, including that the ALJ did not appear to consider the retrospective nature of Dr. Rosenthal's opinions and based her evaluation largely on M.J.R.'s daily activities in 2021. The Commissioner maintains that the ALJ properly evaluated Dr. Rosenthal's opinions and gave legally sufficient reasons, supported by substantial evidence, for finding those opinions less than fully persuasive.

**B.    Legal Standard**

Under the regulations that apply to M.J.R.'s application, the Commissioner does not give specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). An ALJ's decision "including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by

explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id*. § 404.1520c(b)(2).

### C.    Analysis

In her assessment of Dr. Rosenthal's opinions, the ALJ noted that Dr. Rosenthal has been M.J.R.'s primary care physician since March 21, 2017. AR 28. With respect to M.J.R.'s physical functioning, the ALJ found Dr. Rosenthal's opinions "partially persuasive," stating that "some of the limitations are extreme and not supported by the record." AR 28. She explained that M.J.R. "reported improvement in his symptoms," noting 2021 treatment records stating that M.J.R. reported he was "[w]ork[ing] out regularly doing 6 miles on stationary bike per day" and that he was "[a]ble to walk 2 blocks without stopping." AR 28 (citing AR 2157). Additionally, the ALJ pointed to M.J.R.'s October 2023 hearing testimony that he is able to lift and carry 20 pounds. *See id*.; *see also* AR 61. The ALJ further stated that there is "no support" for Dr. Rosenthal's assessed limitations "for sitting, standing or walking 2 hours," or for her opinion that M.J.R. should "'avoid' reaching." *Id*. With respect to M.J.R.'s mental functioning, the ALJ rejected Dr. Rosenthal's opinions as "not persuasive" solely because "Dr. Rosenthal is a [primary care physician]" and "not a specialist." AR 29.

Although the ALJ described Dr. Rosenthal's opinions regarding M.J.R.'s physical functioning as "not supported by the record," it is unclear whether she may have intended to assess

United States District Court
Northern District of California

1    the consistency of Dr. Rosenthal's opinions.  This should be clarified on remand.  In any event, for

2    the reasons discussed below, this order finds that the ALJ's evaluation of Dr. Rosenthal's opinions

3    regarding M.J.R.'s physical and mental functioning does not comply with the requirements for

4    evaluating medical opinions.

5         Supportability and consistency are distinct factors that an ALJ is required to explicitly

6    address in her decision.  *See* 20 C.F.R. § 404.1520c(b)(2); *see also Woods*, 32 F.4th at 794 n.4

7    ("ALJs should endeavor to use these two terms of art—'consistent' and 'support'—with

8    precision."); *E.S. v. Kijakazi*, No. 20-cv-06550-JCS, 2022 WL 4292333, at *12 (N.D. Cal. Sept.

9    16, 2022) (finding that "conflation of the supportability and consistency factors rendered the

10    ALJ's analysis insufficient under the revised articulation requirements."); *Labryssa v. Kijakazi*,

11    No. No. 21-cv-04233-BLF, 2022 WL 2833981, at *6-7 (N.D. Cal. July 20, 2022) (concluding that

12    ALJ must engage with a medical opinion in a "meaningful sense" in evaluating consistency and

13    supportability factors, and that a "passing assessment" which fails to "substantively engage" with

14    the opinion is not supported by substantial evidence).

15         With respect to M.J.R.'s physical functioning, the Commissioner correctly states that the

16    ALJ expressly cited evidence from 2021 treatment records and M.J.R.'s 2023 hearing testimony,

17    as noted above.  However, the issue under consideration is the ALJ's determination that M.J.R.

18    was not disabled prior to February 1, 2017 and was not disabled at any time through December 31,

19    2015.  Elsewhere in her decision,[8] the ALJ did address records of purported improvement in

20    M.J.R.'s condition(s) within this earlier timeframe.  *See* AR 26-27.  However, the ALJ did not

21    assess, in any meaningful way, Dr. Rosenthal's opinions with respect to such evidence.

22         With respect to M.J.R.'s mental functioning, the ALJ did not err in considering Dr.

23    Rosenthal's specialization, as that is one factor that an ALJ may consider in evaluating a medical

24    source's opinions.  *See* 20 C.F.R. § 404.1520c.  However, the ALJ did err in failing to address the

25

26    _____

27    [8] *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (in assessing whether ALJ's
decision is supported by substantial evidence, courts "look[] to all the pages of the ALJ's
decision"); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (law requires ALJ "to
28    discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the
ALJ must do so under the heading 'Findings'") (quotations and citation omitted).

United States District Court
Northern District of California

requisite supportability and consistency factors at all.

While the Commissioner argues that Dr. Rosenthal's opinions were "an outlier" and that "no other provider found [M.J.R.] as limited" (*see* Dkt. No. 16 at ECF 5), these are not reasons articulated by the ALJ in her decision. The Court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (reviewing court is "'constrained to review the reasons the ALJ asserts.'") (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.    DISPOSITION

For the reasons discussed above, the Court finds that remand is appropriate for further proceedings. *See Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018); 42 U.S.C. § 405(g). On remand, the ALJ shall reassess Dr. Rosenthal's opinions and M.J.R.'s RFC for the period prior to February 1, 2017 and, in particular the period from August 25, 2010 to December 31, 2015.

## V.    CONCLUSION

Based on the foregoing, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 23, 2025

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California